# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| CHARLES R. COFFER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:04CV00663 |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Charles R. Coffer seeks judicial review pursuant to 42 U.S.C. § 405(g) of the Commissioner's final decision denying his claim for Disability Insurance Benefits and Supplemental Security Income ("SSI"). The Commissioner's denial decision became final on May 28, 2004, when the Appeals Council found no basis for review of the hearing decision of the Administrative Law Judge ("ALJ"). In this action, the parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

## The Claimant

Plaintiff was born on March 24, 1964, and was 39 years of age on his alleged onset date of disability. He has a high school education and past relevant work as a plumber. Plaintiff alleges disability as of February 13, 2002, due to diabetes.

## The Administrative Proceedings

Plaintiff filed an application for SSI on February 28, 2002 (protective filing date) and for Disability Insurance Benefits on March 4, 2002, alleging disability as of February 13, 2002, due to diabetes. The claim was denied initially and on reconsideration, and Plaintiff filed a request for a hearing. A hearing was held on September 18, 2003, before ALJ Edward W. Seery, in Raleigh, North Carolina, and a decision denying benefits was issued on January 15, 2004. Plaintiff filed a request for review, and on May 28, 2004, the Appeals Council issued a decision finding no basis for review of the ALJ's decision. Plaintiff then filed this request for judicial review in a timely manner.

The findings of the ALJ relevant to this review include the following:

1. Plaintiff met the nondisability requirements of the Social Security Act on February 13, 2002, his alleged onset date of disability, and remained insured through at least January 15, 2004, the date of the ALJ's decision.

2. Plaintiff has not engaged in substantial gainful activity since February 13, 2002, the alleged onset date of his disability.

3-4. Plaintiff suffers from severe diabetes mellitus, impingement syndrome of the right shoulder, reactive depression and memory impairment, and borderline intellect, but does not have an impairment, or combination of impairments, that meets or equals ones listed in Appendix 1, Subpart P, Regulations Number 4.

5. Plaintiff's allegations regarding his limitations are not totally credible.

6-8. Considering all of the medical opinions of record regarding the severity of Plaintiff's impairments, Plaintiff retains the residual functional capacity to perform a full range of "light" work, without any visual, communicative, or environmental restrictions; therefore, Plaintiff is unable to perform his past relevant work as a plumber.

9-12. Plaintiff is a "younger individual," with a "high school education," no transferable skills, and the residual functional capacity to perform a full range of unskilled light work.

13. Based on Plaintiff's age, education, and a residual functional capacity for light work, Medical-Vocational Rule 202.21 directs a finding that Plaintiff is "not disabled."

14. Plaintiff was "not disabled," as defined by the Social Security Act, at any time through January 15, 2004, the date of the ALJ's decision.

## The Scope of Review

The scope of judicial review by this Court of the Commissioner's decision denying benefits is limited. *Frady v. Harris*, 646 F.2d 143, 144 (4th Cir. 1981). The Court must review the entire record to determine whether the Commissioner has applied the correct legal standards and whether the Commissioner's findings are supported by substantial evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Where this is so, the Commissioner's

findings are conclusive. The Court may not reweigh conflicting evidence that is substantial in nature and may not try the case *de novo*. *Id.* Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted), or "evidence which . . . consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (citations omitted).

## Discussion

In making a decision on Plaintiff's claim, the ALJ followed a five-step analysis set out in the Commissioner's regulations. 20 C.F.R. §§ 404.1520 & 416.920 (2004). Under the regulations, the ALJ is to consider whether a claimant (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. The burden of persuasion is on the claimant through the fourth step. *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992). If the claimant reaches the fifth step, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform considering his age, education and work experience. *Id.*

In this case, the ALJ found that Plaintiff met the nondisability requirements of the Social Security Act on February 13, 2002, his alleged onset date of disability, and remained insured through at least January 15, 2004, the date of the ALJ's opinion. At step one of the

-4-

Case 1:04-cv-00663   Document 10   Filed 09/12/05   Page 4 of 12

sequential evaluation, the ALJ found that Plaintiff has not engaged in substantial gainful activity since February 13, 2002, his alleged onset date of disability. Proceeding to steps two and three, the ALJ found that Plaintiff suffers from severe diabetes mellitus, impingement syndrome of the right shoulder, reactive depression and memory impairment, and borderline intellect, but that he does not have an impairment, or combination of impairments, that meets or equals the ones listed in Appendix 1, Subpart P, Regulations Number 4.

Moving on to step four, the ALJ found that, although Plaintiff retains the capacity to perform a full range of "light work," he is unable to perform his past relevant work as a plumber. Finally, at step five of the sequential evaluation, the ALJ found, based on an exertional capacity for a full range of light work, and considering Plaintiff's age, education, and past relevant work experience, that Medical-Vocational Rule 202.21 directed a finding that Plaintiff was "not disabled" at any time through January 15, 2004, the date of the ALJ's decision.

In this action for judicial review, Plaintiff argues that the ALJ committed reversible error by failing to adequately develop the record concerning the exertional and non-exertional limitations imposed by Plaintiff's diabetes-related peripheral neuropathy. (Pleading No. 7, Mem. of Law, at 10-13.) Plaintiff contends that he has experienced gradual loss of sensation and function in his upper and lower extremities over a several-year period, and therefore is unable to perform jobs that require "long term standing or the use of foot and hand controls." *Id.* at 12-13. Additionally, Plaintiff argues that his motor skills are severely diminished in his

-5-

upper extremities and he is unable to perform bilateral dexterous hand movements or actions that require fine motor skills. *Id*.

Plaintiff was first diagnosed with diabetes mellitus in 1981, when he was 17. (Tr. at 47.) An examination of the record reveals that Plaintiff has experienced ongoing problems controlling his blood sugar, and experienced regular episodes of severe hypoglycemia.[1] *Id*. at 99, 115, 116-17, 118-19, 143-46. Plaintiff has had his gallbladder and thyroid removed, and was diagnosed with early diabetic retinopathy in 2002.[2] *Id*. at 80-81, 112, 118. Dr. Susan Spratt, an endocrinologist at Duke University Medical Center who treated Plaintiff's diabetes wrote a letter to the Commissioner stating that, as of March 1, 2002, Plaintiff's hypoglycemia presented a dangerous situation because "[Plaintiff] is no longer aware when [his blood sugar is] starting to become low. Most people experience sweating and palpitations when their blood sugar drops. People with long standing diabetes lose the ability to respond adequately to low blood sugars placing them at higher risk for profound hypoglycemia, hypoglycemic coma, and seizures." *Id*. at 116. Plaintiff testified at the hearing that he had episodes of low blood sugar about once a week. *Id*. at 172-73.

---

[1] There is no evidence in the record that Plaintiff's blood sugar issues were related to a failure to follow prescribed treatment.

[2] The Consultative Examiner who diagnosed Plaintiff with early diabetic retinopathy noted that "[Plaintiff's] diabetic retinopathy is not terribly significant at this point. I feel like his visual prognosis is somewhat guarded, however, due to the progressive tendency of diabetic retinopathy even with good management." (Tr. at 112.)

Plaintiff also testified at the hearing that he had lost the feeling in portions of his upper and lower extremities due to diabetic peripheral neuropathy. *Id.* at 171. Plaintiff stated that the symptoms in his feet and legs were worse than those in his those hands. *Id.* He described his symptoms to the ALJ as follows: "I have, take your shoes off and your toe nails might be blue where you dropped something on them. And I don't, or cut on your legs, and I don't know how it happened." *Id.* As to his hands, Plaintiff testified that "if you pick something up, you try to pick it up and you drop it. You don't know if you're holding it. *Id*. at 180.

Dr. Robert McConville, Plaintiff's primary care physician, first documented Plaintiff's symptoms of peripheral neuropathy in late 2001. At that time, Dr. McConville reported that Plaintiff felt as if his legs were "tickling," "tingling," and "jerking," and that Plaintiff stated that it felt like bugs were crawling on his legs. *Id.* at 101-03. Dr. McConville's medical notes also state that Plaintiff experienced parasthesis in his legs. *Id.* at 103.

Plaintiff also reported symptoms of peripheral neuropathy to Dr. Charles T. Beemer, an orthopedist and surgeon, who evaluated Plaintiff on September 11, 2001 for rotator cuff pain. *Id.* at 95-96. Dr. Beemer's medical notes state that Plaintiff complained of "some numbness in all the fingers in his right hand with driving occasionally. It goes away with just shaking his hand out." *Id.* at 96. Dr. Beemer concluded that Plaintiff was experiencing "[p]robable early mild carpal tunnel syndrome in the right hand, probably complicated by . . . mild diabetic polyneuropathy." *Id.* at 95.

On February 28, 2002, Dr. McConville referred Plaintiff to Dr. Spratt. Dr. Spratt's notes from her New Patient Evaluation of Plaintiff indicate that Plaintiff was experiencing subjective symptoms of "early peripheral neuropathy manifest as coldness in the feet and taking some time to heal cuts that do occur on his feet." *Id.* at 118. Upon examination, Dr. Spratt found that Plaintiff had no reflexes in his ankles, patellar brachial radialis, biceps or triceps, and that sensation was absent in Plaintiff's hands and legs to a 5.07 monofilament. Dr. Spratt concluded that Plaintiff suffered from "severe neuropathy, at risk for ulcerations." *Id.* at 119. [3] Dr. Spratt concluded that Plaintiff might be a candidate for a diabetes pump. *Id.*

The final mention of Plaintiff's neuropathy in the medical record is dated May 28, 2003, when Dr. Spratt referred Plaintiff to Dr. Donald E. Schmechel, a neurologist in the Duke University memory disorders clinic, for an evaluation of Plaintiff's alleged memory and cognitive disorder. *Id.* at 143-146. Dr. Schmechel's notes indicate that Plaintiff had received

---

[3] The New Patient Evaluation dated February 28, 2002 is the only medical record Plaintiff submitted to the Commissioner from Dr. Spratt. *See* Tr. at 118-19. The ALJ argues that "[t]he record fails to show that [Plaintiff] was seen by Dr. Spratt in 2003, which leads to the conclusion that his diabetes and episodes of low blood sugar have been better controlled." *Id.* at 14. This conclusion is not supported by the evidence of record.

Dr. Spratt ordered that Plaintiff undergo blood tests throughout 2002. *See id.* at 120-22, 123-27, 129-30, 131. Also, on December 19, 2002, Dr. Spratt completed a Physical Capacities Evaluation for Plaintiff, on which she stated that she had last examined Plaintiff on October 18, 2002. *Id.* at 142. Finally, the Court notes that Dr. Spratt referred Plaintiff to Dr. Donald E. Schmechel, a neurologist at Duke University's memory disorders clinic, on May 28, 2003, which is consistent with an ongoing treatment relationship between Plaintiff and Dr. Spratt. *Id.* at 143.

an insulin pump approximately one year prior, but nevertheless continued to experience episodes of extreme hypoglycemia with few, if any, warning signs. *Id.* at 143.

Upon examination, Dr. Schmechel found that Plaintiff had a slight decrease in capillary fill time, deceased position sense at toes and fingers, decreased light touch in the stocking glove position, decreased pinprick sensation to midshin level, and decreased vibration sense. *Id.* at 145. Additionally, Dr. Schmechel noted that Plaintiff had no ankle reflexes or grasp reflexes. Dr. Schmechel concluded that Plaintiff suffered from "marked stocking glove peripheral neuropathy as well as right cognitive inefficiencies and diffuse hyperreflexia." *Id.*

Plaintiff argues that the ALJ committed reversible error in not affording controlling weight to the medical evidence and hearing testimony set forth above in developing Plaintiff's residual functional capacity. The ALJ has the option, within the framework established by the regulations and the relevant case law, of not assigning a treating or consulting physician's opinion controlling weight. 20 C.F.R. §§ 404.1527(d)(2) & 416.927(d)(2) (2005). However, if he chooses not to do so, he must give "good reasons." *Id.* In this case, the ALJ gave no explanation whatsoever for not accepting the medical opinions of record regarding Plaintiff's peripheral neuropathy.[4] Indeed, although the ALJ cites to the findings of Plaintiff's treating physicians, he does not discuss Plaintiff's peripheral neuropathy at all.

---

[4] Of course, it is also possible that the ALJ did accept the findings of Plaintiff's physicians regarding his peripheral neuropathy, but did not believe that such limitations warranted exertional or non-exertional limitations sufficient to require a vocational expert. However, in the absence of a discussion of this issue by the ALJ, the Court has no way of reviewing such a determination by the ALJ.

The regulations provide that a job is in the light work category when it requires "a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b) & 416.967(b) (2004). Furthermore,

> [M]any unskilled light jobs do not entail fine use of the fingers. Rather, they require gross use of the hands to grasp, hold, and turn objects. Any limitation on these functional abilities must be considered very carefully to determine its impact on the size of the remaining occupational base of a person who is otherwise found functionally capable of light work.

Social Security Ruling 83-14, *Titles II And XVI: Capability to do Other Work – The Medical – Vocational Rules as a Framework for Evaluating a Combination of Exertional and Nonexertional Impairments* ("SSR 83-14").

In this case, Plaintiff's peripheral neuropathy allegedly causes numbness, loss of sensation, and tingling in his hands, legs, and feet. Dr. Schmechel also noted that Plaintiff had decreased pinprick sensation, a decreased ability to detect vibration, and decreased light touch. (Tr. at 145.) Accordingly, Plaintiff's ability to perform light work is significantly eroded (if not entirely precluded) by restrictions on Plaintiff's ability to grasp, hold and turn objects. *See also* Social Security Ruling 85-15*: Titles II And XVI: Capability to do Other Work – The Medical – Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments* ("SSR 85-15") ("[L]oss of fine manual dexterity narrows the sedentary and light ranges of work much more than it does the medium, heavy, and very heavy ranges of work. The varying

degrees of loss which can occur may require a decision-maker to have the assistance of a [VE]".) Plaintiff also could have difficulties with the standing and walking requirements of light work, and may have limitations on his ability to use hand and foot controls. *See* Social Security Ruling 83-10: *Titles II and XVI: Determining Capability to do Other Work – The Medical-Vocational Rules of Appendix 2* ("SSR 83-10")("Relatively few unskilled light jobs are performed in a seated position. . . . Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time."); *see also* 20 C.F.R. § 404.1567(b) & 416.967(b) (2004). Finally, Plaintiff's recurrent episodes of low blood sugar could make it unsafe for him to climb ladders, work around heights or hazardous machinery, or drive.

Accordingly, the Court finds that the ALJ's determination of Plaintiff's residual functional capacity at step four of the sequential evaluation is not supported by substantial evidence. In the first place, the ALJ fails, without explanation, to discuss the weight he assigns to the opinions of Plaintiff's treating physicians regarding Plaintiff's peripheral neuropathy. The ALJ then compounds this error by failing to include any exertional or non-exertional limitations in Plaintiff's residual functional capacity to account for Plaintiff's peripheral neuropathy. These errors result in the need for a remand for a new hearing.

Conclusion

**IT IS THEREFORE RECOMMENDED** that Plaintiff's motion for judgment on the pleadings (Pleading No. 6) be granted, that Defendant's motion for judgment on the pleadings (Pleading No. 8) be denied, and that judgment be entered remanding this action for a new hearing and further proceedings consistent with this opinion.

          /s/ P. Trevor Sharp
          United States Magistrate Judge

Date: September 12, 2005